# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**
June 18, 2021

Lyle W. Cayce
Clerk

No. 20-30160

UNITED STATES OF AMERICA,

*Plaintiff—Appellee*,

*versus*

JMARREON MACK,

*Defendant—Appellant*.

Appeal from the United States District Court
for the Western District of Louisiana
USDC No. 3:19-CR-29-1

Before HO, OLDHAM, and WILSON, *Circuit Judges*.

PER CURIAM:*

A federal jury convicted Jmarreon Mack of firearms and controlled substance offenses. Mack was sentenced to 210 months' imprisonment and three years' supervised release. On appeal, Mack challenges the district court's denial of his pre-trial motion to suppress evidence, the sufficiency of

---

* Pursuant to 5TH CIRCUIT RULE 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIRCUIT RULE 47.5.4.

the Government's evidence at trial, and the district court's calculation of his sentence. We find no error and affirm.

I.

In April 2018, Louisiana Master Trooper Hollingsworth pulled over a black Buick for an apparent moving violation. During the stop, law enforcement officers noticed a handgun tucked between the driver's seat and the center console. They secured the driver—Mack—and the handgun. A subsequent criminal history check showed Mack was a convicted felon, so Hollingsworth placed him under arrest and searched the vehicle. That search revealed, in addition to the loaded Glock .45 pistol, 23.5 grams of marijuana, eight clear plastic baggies, and a scale. Mack was ultimately charged with felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1); possession with intent to distribute marijuana, in violation of 21 U.S.C. § 841(a)(1) & (b)(1)(D); and possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A).

During pre-trial proceedings, Mack moved to suppress evidence obtained during Hollingsworth's search of the Buick. He argued "[t]he initial stop was without sufficient probable cause" because no moving violation occurred and that any evidence obtained from the stop should be suppressed. At the suppression hearing, the Government relied primarily on Hollingsworth's testimony and footage from the dash cam of Hollingsworth's patrol vehicle. Hollingsworth explained that he stopped Mack because he observed the Buick slowing in a left turn lane—as if to turn left—without a left turn signal activated. The dash cam footage showed Mack's vehicle in fact had a *right* turn signal activated as he approached the left turn. That footage also showed that Hollingsworth made a U-turn after seeing Mack approach the intersection, and that as Hollingsworth came around Mack was executing a left turn with his *left* rear turn signal activated.

No. 20-30160

A magistrate judge issued a Report and Recommendation that the motion to suppress be denied. Analyzing the traffic stop under *Terry v. Ohio*, 392 U.S. 1 (1968), the magistrate judge found Hollingsworth had reasonable suspicion that Mack had committed a moving violation. The district court adopted the magistrate's Report and Recommendations and denied the motion to suppress.

The case proceeded to trial. At the close of the Government's evidence Mack moved for a judgment of acquittal, which the district court denied. A jury ultimately returned a verdict of guilty as to all three counts.

In anticipation of sentencing, the United States Probation Office prepared a pre-sentence investigation report ("PSR"). The PSR calculated Mack's adjusted offense level for counts one and two as 26. It also assessed a "career offender" enhancement under Sentencing Guideline § 4B1.1 because "[t]he defendant was at least 18 years old when he committed the instant offense, the instant offense is a felony-controlled substance offense . . . and Mack has at least two prior felony convictions of either a crime of violence or a controlled substance offense." That enhancement applied, according to the PSR, because Mack had two prior "controlled substance offense" convictions: (1) a 2005 conviction for Attempted Distribution of Cocaine, in violation of LA. STAT. ANN. § 40:967; and (2) a 2007 conviction for Possession of Cocaine with Intent to Distribute, in violation of the same. With the career-offender enhancement, Mack's criminal history category was VI. According to the PSR, Mack's recommended Guidelines range was 360 months to life.

Mack filed written objections to the PSR. Specifically, he objected to application of the career-offender enhancement for two reasons: (1) his 2005 attempted-distribution conviction is not a valid § 4B1.1 predicate because an inchoate crime like attempt falls outside the definition of a "controlled

No. 20-30160

substance offense"; and (2) his 2007 possession with intent to distribute conviction is indivisible and sweeps more broadly than its federal analog, The district court denied Mack's objection to the PSR and calculated the Guidelines range for each count as follows: 120 months and 60 months as the statutory maximums for counts one and two, respectively; and a range of 360 months to life for count three. The district court elected to vary downwards to concurrent terms of 120 and 60 months on the first two counts, and 90 consecutive months on count three, with concurrent three-year terms of supervised release. Mack timely appealed.

## II.

Mack raises four issues on appeal. First, he argues the district court erred in denying his motion to suppress. Second, Mack says the Government failed to prove beyond reasonable doubt that he had intent to distribute the marijuana found in his vehicle. Third, Mack argues his prior attempted-distribution conviction is not a qualifying predicate for the "career offender" enhancement. Fourth, Mack says his possession with intent to distribute conviction is not a qualifying predicate for the same enhancement. We consider each argument in turn.

## A.

Mack first challenges the denial of his motion to suppress. He argues the traffic stop leading to his arrest was unlawful and that evidence discovered thereafter should have been suppressed. We review the district court's factual findings at the suppression hearing for clear error, and its legal conclusion *de novo*. *See United States v. Robinson*, 741 F.3d 588, 594 (5th Cir. 2014). And we view the record in the light most favorable to the party that prevailed below—here, the Government. *See United States v. Cervantes*, 797 F.3d 326, 328 (5th Cir. 2015).

There's no doubt that a traffic stop is a "seizure" for Fourth Amendment purposes. *See Delaware v. Prouse*, 440 U.S. 648, 653 (1979). To justify that seizure, the Government bears the burden of showing (1) the stop was lawful in the first instance and (2) the officer's actions after detention were "reasonably related in scope" to the circumstances giving rise to the stop.[**] *United States v. Andres*, 703 F.3d 828, 832 (5th Cir. 2013) (citing *Terry v. Ohio*, 392 U.S. 1 (1968)); *United States v. Waldrop*, 404 F.3d 365, 368 (5th Cir. 2005) ("[W]here a police officer acts without a warrant, the government bears the burden of proving that the search was valid."). To show the stop was lawful in the first instance, the Government must introduce facts giving rise to an "objectively reasonable suspicion that some sort of illegal activity, such as a traffic violation," took place. *United States v. Lopez-Moreno*, 420 F.3d 420, 430 (5th Cir. 2005).

The Government easily carries its burden. Trooper Hollingsworth testified at the suppression hearing that he saw Mack's vehicle approach a left turn without its front left turn signal illuminated. After Hollingsworth made a U-turn a few seconds later, he saw that Mack had indeed made a left turn into a gas station. As relevant here, Louisiana law requires a motorist to "signal [their] turn continuously for a minimum of 100 feet before the turn." *Traham v. Deville*, 933 So. 2d 187, 197 (La. Ct. App. 2006) (citing LA. STAT. ANN. § 32:104(B)). It further requires: "[A] motor vehicle in use on a highway shall be equipped with, and the required signal shall be given by, signal lamps when the vehicle is so constructed . . . both to the front and to the rear." LA. STAT. ANN. 32:105(B). Having seen Mack approach and execute a left turn—ostensibly without continuously signaling to the front and rear—Hollingsworth reasonably thought Mack had committed a moving

---

[**] The parties do not dispute the second prong, so we do not discuss it.

No. 20-30160

violation. The ensuing traffic stop was thus "justified at its inception." *Andres*, 703 F.3d at 832.

Seeking to avoid that conclusion, Mack argues (1) Hollingsworth "did not have an opportunity to determine whether Mack's vehicle had a functioning left hand turn signal," and/or (2) Hollingsworth "did not have an opportunity to observe the traffic violation he claimed he witnessed."

Neither contention has merit. It is unclear why it should matter that Hollingsworth declined to investigate the functionality of Mack's turn signal—his post-stop observations are irrelevant to the existence of pre-stop reasonable suspicion. *See United States v. Darrell*, 945 F.3d 929, 933 n. 20 (5th Cir. 2019) ("[A]nything found after the moment [defendant] was stopped . . . does not weigh in favor of reasonable suspicion because it was not obtained until after the seizure." (quotation omitted)). As for the assertion that Hollingsworth did not "observe the traffic violation he claimed he witnessed," Mack fails to show the district court's factual finding to the contrary was clearly erroneous. Nor could he—both Trooper Hollingsworth's testimony and the video evidence established Hollingsworth *did* see Mack approach the left turn without a continuous signal active, then seconds later execute that turn.

In sum, Mack was lawfully stopped. The district court therefore did not err in denying Mack's suppression motion.

## B.

Next, Mack challenges the sufficiency of the Government's evidence. Specifically, he argues there was insufficient evidence that he intended to distribute the marijuana found in his vehicle. And by extension, Mack says, there was insufficient evidence to show he possessed a firearm "in furtherance of a drug trafficking crime."

6

Mack preserved a sufficiency challenge by moving for judgment of acquittal at the close of the Government's evidence. *See* Fed. R. Crim. P. 29(a); *United States v. Thompson*, 811 F.3d 717, 725 (5th Cir. 2016). So we review the sufficiency of the Government's evidence *de novo*, *United States v. Floyd*, 343 F.3d 363, 370 (5th Cir. 2003), and we'll affirm so long as a rational trier of fact could find the Government carried its burden at trial, *United States v. Sacerio*, 952 F.2d 860, 863 (5th Cir. 1992); *United States v. Walters*, 87 F.3d 663, 667 (5th Cir. 1996) ("It is fundamental that we, as an appellate court, owe great deference to a jury verdict.").

To obtain a conviction, the Government had to prove Mack (1) knowingly possessed a controlled substance; (2) that the substance was in fact marijuana; and (3) that Mack possessed the substance with intent to distribute it. *United States v. Vinagre-Hernandez*, 925 F.3d 761, 764 (5th Cir. 2019). The Government could rely on circumstantial evidence to prove those elements. *United States v. Munoz*, 957 F.2d 171, 174 (5th Cir. 1992).

Here, we see no reason to disturb the jury's verdict. The Government showed that at the time of Mack's arrest he possessed a loaded Glock .45 pistol, 23.5 grams of marijuana, eight clear plastic baggies, and a scale. Further evidence showed Mack was the sole occupant of the Buick at the time of the stop. Testimony from a federal Drug Enforcement Administration agent established that drug dealers often carry firearms for protection during transactions, and that the scales and baggies in the vehicle are of the sort commonly used in dealing marijuana. Taken together, that evidence is sufficient for a rational trier of fact to conclude Mack possessed the marijuana with intent to distribute. *Cf. United States v. Williamson*, 533 F.3d 269, 278 (5th Cir. 2008) (stating that digital scales found with narcotics "provides support to the conclusion that [the defendant] had an intent to distribute"). And by extension, a rational trier of fact could conclude Mack's possession of the Glock was in furtherance of a drug trafficking crime.

## C.

Next, we consider whether the district court erred in treating Mack's 2006 attempted-distribution offense as a predicate conviction triggering the Sentencing Guidelines' career-offender enhancement. That enhancement is found in § 4B1.1 of the Guidelines. It applies, in relevant part, where "the defendant has at least two prior felony convictions of . . . a controlled substance offense." U.S.S.G. § 4B1.1(a)(3). Mack argues that his 2006 attempted distribution conviction is not a "controlled substance offense" because the Guidelines' definition of that term, *see id.* § 4B1.2(b), does not include inchoate offenses like attempt.

Mack's argument is foreclosed by precedent. We long ago held that § 4B1.1's career-offender enhancement lawfully includes inchoate offenses. *See United States v. Lightbourn*, 115 F.3d 291, 293 (5th Cir. 1997). And since *Lightbourn*, several panels of this Court have acknowledged it controls questions materially indistinguishable from Mack's. *See, e.g.*, *United States v. Kendrick*, 980 F.3d 432, 444 (5th Cir. 2020) (rejecting an argument that "conspiracy convictions should not qualify as 'controlled substance offense[s]' under § 4B1.1(a)" because *Lightbourn* "remains binding"); *United States v. Goodin*, 835 F. App'x 771, 782 (5th Cir. 2021) (explaining that *Lightbourn* held the Commission was "authorized . . . to add inchoate offenses such as conspiracy to the 'controlled substance offense' definition in U.S.S.G. § 4B1.2[,]" and that "we are bound" by that precedent).

## D.

Lastly, Mack argues his prior conviction for possession with intent to distribute cocaine is not a "controlled substance offense" within the meaning of § 4B1.1. Mack says the Louisiana statute he was convicted under, LA. STAT. ANN. § 40:967(A), is indivisible and broader than the "generic crime" as it is defined in federal law.

This argument too is foreclosed by precedent. *See United States v. Frierson*, 981 F.3d 314 (5th Cir. 2020). There, we held "§ 40.967(A) is divisible." *Id.* at 318. We further held that "possession with intent to distribute cocaine under § 40.967(A)" is "sufficiently narrow to fall within the scope of the elements in the 'generic crime,' § 841(a)." *Id.* Accordingly, a conviction under that statute "supports the application of the career offender sentence enhancement under U.S.S.G. § 4B1.1." *Id.* Under *Frierson*, the district court did not err in treating Mack's § 40.967(A) conviction as a predicate for application of the career-offender enhancement.

AFFIRMED.